IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL A. WILSON and KAREN L. SELL,<br><br>Defendants. | CV 14-80-BU-DWM-JCL<br><br>FINDINGS AND RECOMMENDATION |

Before the Court is Plaintiff PNC Bank, National Association's Fed. R. Civ. P. 12(b)(6) motion to dismiss Defendant Michael Wilson's counterclaims. For the reasons discussed, the Court recommends the motion be granted in part, and denied in part.

# I. Background

### A. PNC Bank's Claims

In March 2009, PNC Bank's predecessor in interest, National City Mortgage, loaned $186,800 to Defendants Michael Wilson and Karen Sell for the purchase of real property in Gallatin County, Montana. On March 20, 2009, Wilson and Sell signed a promissory note agreeing to make principal and interest

1

payments on the loan in the amount of $974.44 per month until April 1, 2039, when the balance due is to be paid in full. They also signed a deed of trust to secure their loan payment obligations under the promissory note. The deed of trust identifies National City Mortgage as both the lender and the beneficiary under the trust. The deed of trust was executed pursuant to the Small Tract Financing Act of Montana, Mont. Code Ann. § 71-1-301 et seq.

On November 6, 2009, National City Mortgage merged with PNC Bank, resulting in PNC Bank becoming the successor in interest with respect to the subject promissory note and deed of trust.

Wilson and Sell made monthly payments pursuant to the promissory note through May 2011. But thereafter they failed to make any payments on the loan. PNC sent notices of default to Wilson and Sell informing them of the total amount due to cure their default on the loan, but they have not made any further payment on the loan. Interest on the loan and late charges continue to accrue against Wilson and Sell.

As a result of Wilson and Sell's default, and pursuant to the terms of the promissory note and the deed of trust, PNC Bank commenced this action to foreclose on its interest in the deed of trust. It requests the Court order a judicial sale of the subject real property and allow distribution of the proceeds to pay the

balance due on the promissory note including principal, interest, fees and costs.

B. <u>**Wilson's Counterclaims**</u>

In 2009 Wilson suffered a disabling work-related injury and was unable to work after October 2009. In December 2009, while still making monthly payments on the loan, Wilson requested assistance from PNC Bank to modify his loan payments due to his loss of employment and resulting financial hardship. PNC Bank requested that Wilson provide certain financial information in support of his request for a loan modification. Wilson submitted the requested information to PNC Bank, but on January 4, 2010, it rejected Wilson's request for a loan modification.

According to Wilson, PNC Bank invited him to resubmit certain financial information in support of his request for a loan modification. In March 2010 Wilson responded with the financial information requested, but PNC Bank again rejected Wilson's request. This process repeated multiple times initiated by PNC Bank's repeated invitation to Wilson to request a loan modification and to resubmit supporting financial information. PNC Bank suggested to him that he "might" qualify for a loan modification if he submitted his request and supporting financial information. (Doc. 28 at ¶¶ 19 and 59.) But each time Wilson submitted his request PNC Bank declined to modify the loan. Wilson's requests and PNC

Bank's rejections occurred in 2010, 2011, and in March and April of 2012.

Wilson contends PNC Bank never reviewed the substance of his requests or the financial information he submitted to it, and it never entered any meaningful negotiations with Wilson to modify the loan. Instead, PNC Bank made repeated allegedly empty suggestions to Wilson that if he would resubmit supporting financial information there were programs available to assist him and that it would consider his eligibility for a loan modification so that he could continue to own his home. Wilson asserts PNC Bank thereby unlawfully misled him to believe he might qualify for a loan modification.

Wilson notes that at some point in the process of requesting a loan modification, he received written correspondence from PNC Bank that informed him that PNC Bank did not have the contractual authority to modify his loan.

In April 2012, prior to this action in federal court, PNC Bank commenced a foreclosure action against Wilson and Karen Sell in the Montana Eighteenth Judicial District Court, Gallatin County regarding the same promissory note and real property. (*PNC Bank v. Sell and Wilson*, DV-12-296A ("*PNC Bank I*")). The *PNC Bank I* case proceeded to trial, and on the first day of trial the presiding state court judge encouraged the parties to engage in settlement discussions. Wilson alleges that during those discussions PNC Bank's attorney represented to Wilson

that he could submit a request for a loan modification, leading him to believe PNC Bank would consider the request and that it had authority to make a modification. In response, Wilson gathered all the requested financial information and submitted his request for a modification to PNC Bank's attorney on July 26, 2013. On that same date, PNC Bank's attorney informed Wilson that PNC Bank rejected his request.[1] Wilson alleges that despite PNC Bank's attorney's representations, PNC Bank did not give his request for a modification any consideration.

Wilson alleges that as a result of PNC Bank's conduct in repeatedly inviting Wilson to request loan modifications and its refusal to modify the loan, he has incurred damages in the form of additional interest and penalties, a bad credit rating, and emotional distress. But, significantly, Wilson also states that due to both his financial hardship, and Karen Sell's failure to contribute to further loan payments, he was unable to comply with his financial obligations under the promissory note. (Doc. 28 at ¶ 35.)

Wilson advances counterclaims under Montana law for fraud, constructive fraud, and violations of the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. §§ 30-14-101, *et seq.*, (Consumer

---

[1] The parties did not resolve their dispute through either the prior settlement discussions or the litigation in *PNC Bank I*, and on September 16, 2013, *PNC Bank I* was dismissed without prejudice. (Doc. 45-3.)

Protection Act).

## II. Applicable Law – Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits a party to move for dismissal where the allegations of a pleading "fail[] to state a claim upon which relief can be granted." A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). In addressing a Rule 12(b)(6) challenge the Court accepts all factual allegations in the complaint or counterclaim as true (*Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740 (1976)), and construes the pleading in the light most favorable to the nonmoving party. *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989). But the Court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court's standard of review under Rule 12(b)(6) is informed by the provision of Fed. R. Civ. P. 8(a)(2) which requires that a pleading "must contain a 'short and plain statement of the claim showing that the pleader is entitled to

relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) (quoting Rule 8). Although Rule 8(a)(2) does not require "detailed factual allegations", a plaintiff must set forth more than bare allegations that the defendant unlawfully harmed the plaintiff. *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility does not equate with "probability", but it requires "more than a sheer possibility that a defendant has acted unlawfully[,]" and factual allegations "that are 'merely consistent with' a defendant's liability" do not cross the line between possibility and plausibility. *Id*. Allegations which permit only an inference of the "mere possibility of misconduct" do not "show[] that the pleader is entitled to relief[.]" *Ashcroft*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

## III. Discussion

### A. Statute of Limitations

PNC Bank argues that Wilson's fraud, constructive fraud, and Montana Consumer Protection Act claims are barred by two applicable two-year statutes of limitations. Mont. Code Ann. § 27-2-203 (fraud) and Mont. Code Ann. § 27-2-211(1)(c) (statutory liability).[2] PNC Bank argues that Wilson's causes of action accrued at the latest by April or June, 2012, which is more than 2 years before Wilson filed his counterclaims in this action on December 30, 2014. (Doc. 38 at 11.)

Wilson counters that because his counterclaims arise from the same transaction or occurrence that is the subject of PNC Bank's claims against Wilson they are not time-barred. Specifically, he argues that the provisions of Mont. Code Ann. § 27-2-408(2) entitle him "to assert [his counterclaims] notwithstanding any applicable limitations period." (Doc. 45 at 12 of 27 (quoting *First Security Bank of Missoula v. Ranch Recovery LLC*, 976 P.2d 956, 961 (Mont. 1999).

For the reasons discussed, the Court agrees section 27-2-408 saves Wilson's

---

[2]Because subject matter jurisdiction is based upon diversity of citizenship, the substantive law of Montana controls resolution of the parties' claims. *Medical Laboratory Mgt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

8

claims from dismissal, but not under the analysis Wilson offers.

The statute on which Wilson relies – Mont. Code Ann. § 27-2-408 – provides that the statute of limitations applicable to a defendant's counterclaim against a plaintiff is tolled by the commencement of the plaintiff's action, and is also tolled for the period of time a prior action commenced by the same plaintiff against the defendant was pending in court.

> (1) A defendant is entitled to assert against a plaintiff, by pleading or amendment, any counterclaim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the defendant.
>
> (2) The time period between the commencement and termination of an action is not part of the time limit for the commencement of an action by a defendant to recover for a counterclaim or to interpose it in that action **or another action by the same plaintiff** or a successor arising out of the same transaction or occurrence.

Mont. Code Ann. § 27-2-408 (emphasis added).

Although PNC Bank argues Wilson's counterclaims accrued by April or June, 2012, it neglects to take into account that in April 2012 it commenced the *PNC Bank I* action against Wilson arising from the same loan transaction that is the subject of this federal case. *PNC Bank I* was dismissed on September 16, 2013. Therefore, pursuant to section 27-2-408(2), the two-year statutes of limitations applicable to Wilson's counterclaims were tolled from April 2012 through September 16, 2013. And section 27-2-408(2) again operated to toll the

statutes of limitations when PNC Bank commenced this action on November 24, 2014. Therefore, only approximately 14 months – from September 2013 to November 2014 – of the two-year statutes of limitations applicable to Wilson's counterclaims have passed. Wilson's counterclaims, therefore, are not barred by the statutes of limitations, and PNC Bank's motion should be denied in this respect.

### B. Fraud and Constructive Fraud

PNC Bank also moves to dismiss Wilson's counterclaims of fraud and constructive fraud on the basis that his allegations fail to set forth the necessary detailed facts, with particularity, as required under Fed. R. Civ. P. 9(b). It argues, in part, that Wilson's pleading does not set forth facts identifying any specific action that Wilson took, or that he withheld from taking, to his detriment, i.e. that Wilson altered his position to his detriment, in reliance upon PNC Bank's representations inviting him to submit loan modification requests. Rather, Wilson's allegations, according to PNC Bank, establish that it was his own financial hardship, and not PNC Bank's representations, that caused him to alter his position and default on his loan payment obligations. The Court agrees.

Federal Rule of Civil Procedure 9(b) requires that claims of fraud "must state with particularity the circumstances constituting fraud[.]" *See Salameh v.*

*Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Salameh*, 726 F.3d at 1133 (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). Any claim that "sound[s] in fraud" must also comply with the particularity requirements of Rule 9(b). *Goldberg v. BAC Home Loans Servicing, LP*, 2013 WL 4501014, *4 (S.D. Cal. 2013) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). To satisfy the particularity standard a pleading must "'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh*, 726 F.3d at 1133 (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

The success of Wilson's claims for both fraud and constructive fraud requires, in pertinent part, that he allege and establish that he detrimentally relied upon PNC Bank's representations. For the reasons discussed, the Court concludes that Wilson's allegations do not plausibly suggest he engaged in the requisite detrimental reliance.

In Montana, constructive fraud is statutorily defined as:

(1) any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice

of anyone claiming under that person; or

(2) any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.

Mont. Code Ann. § 28-2-406. A prima facie case of constructive fraud requires facts pled to support all eight elements of the claim as follows:

a representation; the falsity of the representation; the materiality of the representation; the speaker's knowledge of the representation's falsity or ignorance of its truth; the hearer's ignorance of the representation's falsity; the hearer's reliance upon the truth of the representation; the hearer's right to rely upon the representation; and the hearer's consequent and proximate injury or damage caused by reliance on the representation.

*White v. Longley*, 244 P.3d 753, 759 (Mont. 2010).

A claim of actual fraud is very similar to constructive fraud. *Town of Geraldine v. Montana Municipal Ins. Authority*, 198 P.3d 796, 801 (Mont. 2008). The nine elements of fraud are as follows:

(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge that it is false, (5) the speaker's intent that the representation will be relied upon by the hearer to his detriment, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance upon its truth, (8) the hearer's right to rely upon it, and (9) the hearer's consequent injury as the result of his reliance.

*In re Adoption of S.R.T.*, 260 P.3d 177, 180 (Mont. 2011) (citing *Durbin v. Ross*, 916 P.2d 758, 762 (Mont. 1996)). The only distinction between fraud and constructive fraud is that in a claim for constructive fraud "a plaintiff need not

12

prove the fifth element [of fraud] relating to intent to deceive or dishonesty of purpose." *Town of Geraldine*, 198 P.3d at 801 (quoting *State ex rel. State Compensation Mutual Ins. Fund v. Berg*, 927 P.2d 975, 983 (Mont. 1996)).

Wilson's allegations fail to plausibly suggest that he altered either his financial or legal position to his detriment in reliance upon PNC Bank's invitations to him to submit loan modification requests. Although Wilson suggests he would not be in default if PNC Bank had modified his loan, the allegations establish he defaulted on his loan payments and incurred additional fees, costs, expenses and damages due to his own disabling injury and financial hardship,[3] not because he altered his position in reliance upon PNC Bank's representations that he might qualify for a loan modification. Wilson's factual allegations do not identify any way in which he altered his position to his detriment in reliance upon PNC Bank's representations. Wilson's factual allegations do not plausibly suggest that his conduct in repeatedly re-submitting his loan modification requests altered his position to his detriment.[4] Thus,

---

[3]Wilson alleges that "[i]n addition to the financial difficulties created by his disability, Wilson has been unable to uphold his obligations under the financing arrangements because Sell failed and refused to contribute payments even though she was obligated to do so under the financing arrangements." (Doc. 28 at ¶ 35.)

[4]*Cf. Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1181-84 (Mont. 2014) (finding genuine issues of material fact existed to support detrimental

Wilson's claims for fraud and constructive fraud are deficient and should be dismissed.

### C. Montana Consumer Protection Act

Finally, PNC Bank moves to dismiss Wilson's claim under the Consumer Protection Act, Mont. Code Ann. § 30-14-101 et seq., contending Wilson has failed to satisfy the particularity requirement of Fed. R. Civ. P. 9(b).

Under Ninth Circuit law, Rule 9(b) applies to claims "grounded in fraud" or which "sound in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009). Even where fraud is not a necessary element of a claim, the claim may still be grounded in fraud where the plaintiff alleges the defendant engaged in fraudulent conduct and the plaintiff's claim is based upon that conduct. *Id*. It is those allegations which aver fraud that are subject to the heightened pleading and particularity requirement. *Id*., 567 F.3d at 1124. And since the Rule 9(b) particularity requirement is federally imposed, the fact that the state courts may

---

reliance and claims of actual and constructive fraud where evidence suggested the lender represented to, and advised, the borrower (1) to intentionally miss a monthly payment to invoke the loan modification process, (2) that it had actually approved the borrower for a modification, (3) to make reduced monthly payments, (3) to ignore default notices from the lender, and (4) to ignore the borrower's obligation to cure the default, thereby causing the borrower's default, causing the amount the borrower owed to cure the default to grow, and causing foreclosure to occur).

not apply the state-court particularity pleading requirement to a certain state law cause of action is unavailing. *Id*.

Wilson's Consumer Protection Act claim is expressly grounded upon the same allegations of fraud against PNC Bank as those that support Wilson's claims of fraud and constructive fraud. (Doc. 28 at ¶ 80.) Therefore, Rule 9(b) applies to his claim. *See Keegan v. American Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 957-58 (C.D. Cal. 2012) (concluding Rule 9(b) applies to a claim under the Montana Consumer Protection Act that is predicated upon alleged fraudulent conduct).

The particularity requirement of Rule 9(b) demands that the allegations of fraud be specific enough to identify the circumstances constituting fraud so that defendant has notice of the particular misconduct and can defend against the specific charge. *Kearns*, 567 F.3d at 1124. *Keegan*, 838 F. Supp. 2d at 937 (citing *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)). For the reasons stated, the Court concludes Wilson's allegations of fraudulent conduct under his Consumer Protection Act claim are sufficiently particular.

Wilson's allegations identify the circumstances of PNC Bank's conduct which he contends constitute fraud. The written material Wilson received from PNC Bank indicated PNC Bank did not have authority to modify Wilson's loan.

Yet, accepting Wilson's allegations as true, PNC Bank represented to Wilson he might qualify for a loan modification, and he should submit a modification request to it supported by necessary information and documentation. Wilson alleges PNC Bank falsely represented to him that it would consider his loan modification request, but that it actually had no intention of reviewing his modification paperwork, or entering into a loan modification agreement with him. (Doc. 28 at ¶¶ 63 and 67.) It consistently rejected his requests.

The Court concludes Wilson's allegations sufficiently identify the nature of PNC Bank's alleged fraudulent conduct as required by Rule 9(b). But unlike Wilson's claims of fraud, his claim under the Consumer Protection Act does not require him to plead and prove the individual elements of fraud discussed above, including detrimental reliance. Instead, he need only identify plausible unfair or deceptive acts committed by PNC Bank.

The Consumer Protection Act declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code Ann. § 30-14-103. For purposes of section 30-14-103, an unlawful, "unfair act or practice is one which offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rohrer v. Knudson*, 203 P.3d 759, 764

(Mont. 2009). Any consumer who sustains a loss as a result of conduct that is unlawful may pursue a cause of action for relief. Mont. Code Ann. § 30-14-133.

A "consumer" under the Act is a "person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes." Mont. Code Ann. § 30-14-102(1). The business of consumer and real estate lending and collecting of loan proceeds "is the sale of a service" and constitutes a trade or commerce covered by sections 30-14-102(1), (8) and 30-14-103. *Baird v. Northwest Bank*, 843 P.2d 327, 333 (Mont. 1992) (citing *In re Smith*, 866 F.2d 576, 582 (3rd Cir. 1989)).

Accepting Wilson's allegations as true, they adequately state a claim under the Consumer Protection Act. Wilson and Karen Sell executed the subject promissory note and deed of trust for the purpose of securing the real estate financing. Therefore, Wilson and PNC Bank are engaged in a debtor/creditor relationship with respect to real estate lending services for consumer purposes.

Wilson alleges PNC Bank's conduct in repeatedly inviting him to apply for a loan modification, and then rejecting his application, was "unfair and deceptive[.]" (Doc. 28 at ¶ 79.) He alleges PNC Bank engaged in this conduct despite written correspondence he had received from it stating it did not have authority to modify the loan. (Doc. 28 at ¶ 23.) He alleges PNC Bank's offers

with respect to loan modifications were empty and that PNC Bank never seriously considered his modification requests. (Doc. 28 at ¶¶ 71, 77 and 84.) These factual circumstances plausibly suggest PNC Bank's conduct was immoral, unethical, oppressive, unscrupulous or substantially injurious to Wilson as a consumer. *See Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1184-85 (Mont. 2014).

Further, Wilson alleges that he sustained damages as a result of PNC Bank's conduct. It required him to "jump through its hoops numerous times" but it failed to work with him in actually effecting a modification of his loan. (Doc. 28 at ¶ 36.) He asserts he suffered emotional harm as a result of PNC Bank's tactics. The question of the existence and extent of Wilson's actual damages caused by PNC Bank's conduct in violation of the Consumer Protection Act should be resolved by the trier of fact. *Morrow*, 324 P.3d at 1185.

Based on the foregoing, and under the pleading standards required by Fed. R. Civ. P. 12(b)(6), the Court finds that Wilson's allegations at least state a plausible claim for relief under the Consumer Protection Act.

## IV. Conclusion

Based on the foregoing, IT IS HEREBY RECOMMENDED that PNC Bank's motion be GRANTED in part. Wilson's counterclaims for fraud and

constructive fraud should be DISMISSED.  But PNC Bank's motion should be

DENIED in all further respects.

DATED this 4th day of June, 2015.

                                                                                 /s/ Jeremiah C. Lynch

                                                                                 Jeremiah C. Lynch
                                                                                 United States Magistrate Judge