IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL A. WILSON and KAREN L. SELL,<br><br>Defendants. | CV 14-80-BU-DWM-JCL<br><br>FINDINGS AND RECOMMENDATION |

Before the Court is Plaintiff PNC Bank, National Association's Fed. R. Civ. P. 56 motion for summary judgment on its complaint for foreclosure, and dismissal of Defendant Michael A. Wilson's counterclaim under the Montana Consumer Protection Act. For the reasons discussed, the Court recommends the motion be granted.

**I.    Discussion**

In March 2009, PNC Bank's predecessor in interest, National City Mortgage, loaned $186,800 to Defendants Michael Wilson and Karen Sell for the purchase of real property in Gallatin County, Montana ("Gallatin Property"). Wilson and Sell signed a promissory note for the loan, and they also signed a deed

1

of trust pledging the Gallatin Property to secure their loan payment obligations.

On November 6, 2009, National City Mortgage merged with PNC Bank. As a result PNC Bank became the successor in interest under the promissory note and deed of trust.

Wilson and Sell made monthly payments pursuant to the promissory note through May 2011. But thereafter they failed to make any further payments on the loan.

As a result of Wilson and Sell's default on the promissory note, and pursuant to the terms of both the note and the deed of trust, PNC Bank commenced this action to foreclose on its interest in the deed of trust. It requests foreclosure and sale of the Gallatin Property be ordered.[1]

In response to PNC Bank's foreclosure action, Wilson filed counterclaims against PNC Bank. He alleges PNC Bank engaged in unlawful conduct when he attempted to obtain a modification of the loan from it. The substance of his allegations are as follows:

In 2009 Wilson began experiencing financial difficulties. Therefore, beginning in 2009 Wilson contacted PNC Bank to inquire about modifying his

---

[1] In 2012, Sell conveyed her interest in the Gallatin Property to Wilson, and Wilson is now the sole owner of the property.

loan. PNC Bank directed Wilson to provide numerous documents to support his request for a loan modification, and he provided the necessary documents.

In January 2010, PNC Bank rejected Wilson's modification request. But, at the same time, it requested that he resubmit the same supporting documents and information to again apply for possible loan modification options.

According to Wilson, this cycle of PNC Bank's conduct in requesting supporting documents from Wilson, and then rejecting his request for a modification, continued multiple times. Wilson asserts he requested a loan modification at least seven times from 2010 through 2012, but PNC Bank rejected each request. He alleges PNC Bank never entered any meaningful discussions with him concerning a modification.

Wilson alleges that PNC Bank's course of conduct "led [him] to believe he might qualify for modifications." (Doc. 28 at ¶ 19.) Written communications from PNC Bank stated its goal was to help Wilson continue with his home ownership and it informed him "programs" were available to help him, but that it needed additional information from Wilson. Wilson complains, however, that PNC Bank later informed him that a loan modification was not possible because PNC Bank did not have contractual authority to modify the loan.

Wilson emphasizes that for much of the time while he was requesting a loan

3

modification he was not in default under the promissory note. But his allegations confirm that due to multiple factors contributing to his financial difficulties, he was "unable to uphold his obligations under the financing arrangements" with PNC Bank. (Doc. 28 at ¶ 35.)

PNC Bank initially commenced its foreclosure action against Wilson in state court. In July 2013, during the course of that action, the parties attempted to settle the case. During those discussions, counsel for PNC Bank represented to Wilson that he could again submit a request for a loan modification. Based on that representation, Wilson collected all of the required supporting documents and information, and submitted his loan modification request to PNC Bank. But on the same day of his submission, counsel for PNC Bank informed Wilson that PNC Bank had rejected Wilson's request. Wilson complains that even during those discussions PNC Bank still did not have authority to modify his loan.

Wilson alleges he has sustained damages as a result of PNC Bank's conduct: He has incurred additional interest and penalties as a result of his default; his credit rating has been damaged; he has suffered emotional distress including lost sleep, lost appetite and weight loss, stress, depression, anxiety and anger problems; his family relationships have suffered due to the stigma of the foreclosure process; and he has sold personal property items to generate funds to

pay for the necessities of life.

Based on the foregoing, Wilson advances counterclaims against PNC Bank under Montana law – for fraud, constructive fraud, and violations of the Montana Consumer Protection Act. By Order entered June 23, 2015, the Court dismissed Wilson's claims for fraud.

## II. Applicable Law

### A. Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986). A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either: (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial. *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must

go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), abrogated on other grounds as noted in *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

### B. Application of Montana Law

In this diversity action, the Court applies the substantive law of Montana, the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

## III. Discussion

### A. PNC Bank's Foreclosure Action

PNC Bank moves for summary judgment granting its claim for foreclosure and sale of the Gallatin Property. Specifically, it argues Wilson is in default under the promissory note, that it is the proper party in interest with standing to pursue foreclosure under the promissory note and the deed of trust, and that it is entitled to foreclosure and sale. Wilson does not dispute these assertions. Rather, he

argues PNC Bank is not entitled to foreclosure and sale because its conduct relative to his requests for a loan modification violated the Montana Consumer Protection Act. Emphasizing that foreclosure is an equitable remedy (*Blaine Bank of Montana v. Haugen*, 858 P.2d 14, 18 (Mont. 1993)), and in equity a person may not take advantage of the person's own wrong (Mont. Code Ann. § 1-3-208), Wilson argues PNC Bank is barred from foreclosure under the doctrine of unclean hands based on its violations of the Consumer Protection Act. *See Cowan v. Cowan*, 89 P.3d 6, 9 (Mont. 2004) (discussing doctrine of "unclean hands").

But for the reasons discussed, the Court concludes Wilson cannot sustain his claims under the Consumer Protection Act. And Wilson does not advance any further argument in opposition to PNC Bank's claim for foreclosure. Therefore, PNC Bank's motion for summary judgment should be granted in this regard.

    **B.** **Wilson's Claims Under the Montana Consumer Protection Act**

The Montana Consumer Protection Act prevents lenders from engaging in "[u]nfair methods of competition and unfair or deceptive acts or practices" in the servicing of loans. Mont. Code Ann. § 30-14-103. *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1184 (Mont. 2014). An act or practice is deemed "unfair if it 'offends established public policy and ... is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id*. (citation omitted). "A

consumer who suffers any ascertainable loss of money or property" may bring an action under the Act. Mont. Code Ann. § 30-14-133(1). Wilson's allegations in his pleading assert that PNC Bank engaged in unfair or deceptive acts or practices when it falsely represented to him that: (1) he might qualify for a loan modification; (2) it would actually consider his applications for a loan modification; and (3) it had proper authority to actually enter a loan modification.

During the discovery phase of this action, however, the specifics of Wilson's claims apparently changed in some respects. As reflected in his briefing on PNC Bank's motion, and although not alleged in his counterclaims, Wilson now additionally contends that at some point in his discussions with PNC Bank it inappropriately suggested to him that he would need to be in default on his loan before it would consider a loan modification. But Wilson does not identify a specific time frame in which he received that information from PNC Bank, and he does not identify any specific person who conveyed that message to him.

PNC Bank moves for summary judgment dismissing Wilson's Consumer Protection Act claims as refined or modified during discovery. Specifically, it argues (1) Wilson never submitted a complete loan modification application for it to consider, (2) it in fact had authority to enter a loan modification, (3) it did not instruct Wilson to default on his loan, and (4) Wilson suffered no damages as a

result of PNC Bank's conduct.

### 1. Incomplete Modification Applications

PNC Bank asserts it could not consider Wilson's loan modification applications because he never submitted complete financial documents and information as required to support his requests for a loan modification. With respect to each of Wilson's loan modification requests, PNC Bank identifies – through the affidavit testimony of Dorothy Thomas, its mortgage officer – specific deficiencies in the supporting documents or information that Wilson provided with his applications.

In response, Wilson relies upon PNC Bank's records which he believes establishes that PNC Bank did, in fact, find at least three of his modification applications were complete. PNC Bank's records from March 17, 2010, state as follows: "INFORMATION RECEIVED"; "INCOME VERIFICATION FOR ALL SOURCES LISTED"; and "INITIAL REVIEW COMPLETED. BORROWER SHOWING SURPLUS INCOME. PROCEEDING WITH QUALIFICATION PROCESS." (Doc. 66-1 at 78-79 of 81.) Wilson contends these notes indicate his request was complete.

But Wilson's own interpretation of PNC Bank's notes from March 17, 2010, is nothing more than his speculative conclusion as to the substantive meaning of

those notes. Unsubstantiated speculation as to what is asserted as a "fact" is insufficient to establish a genuine issue of material fact to preclude summary judgment. *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). Furthermore, it remains undisputed from Dorothy Thomas's affidavit that Wilson did not provide documents verifying his unemployment income. (Doc. 66 at ¶ 32.) Therefore, Wilson's application in March, 2010, was not complete, and there exists no triable issue of fact to the contrary.

Next, Wilson asserts that documents he submitted on July 9, 2010, completed his prior partial application. Wilson again relies upon PNC Bank's notes in its records which state: "RECEIVED FAX FROM BWWR, WITH DOCS REQUESTED. COMPLETE FILE WILL SUBMIT TO NEGOTIATOR FOR REVIEW." (Doc. 66-1 at 76 of 81.) Although Wilson interprets these notes as establishing his application materials were complete, again his interpretation constitutes speculation as to whether the notes necessarily mean his modification request was totally complete. And again, Wilson does not respond to Thomas's affidavit testimony establishing that Wilson's July 9, 2010 documents did not verify information on his financial form. (Doc. 66 at ¶ 36.)

Finally, Wilson asserts that PNC Bank's records from August 22, 2011, indicate PNC Bank completed a review of Wilson's loan modification package.

10

The records from that date state: "INITIAL REVIEW COMPLETED. BORROWER SHOWING SURPLUS INCOME. PROCEEDING WITH QUALIFICATION PROCESS." (Doc. 66-1 at 74 of 81.) But Wilson again speculatively interprets these notes to mean the documents PNC Bank received from Wilson actually completed his application. To the contrary, the notes clearly state that only the "initial review" was complete, not that his application was complete. And Thomas's affidavit testimony confirms these notes do not establish that Wilson's application was complete; Thomas states further review was required to assess whether the application was complete. (Doc. 83-1 at ¶ 9.)

Based on the foregoing, the Court finds Wilson has failed to identify evidence sufficient to raise a genuine issue of material fact as to whether he ever actually submitted a completed loan modification application for PNC Bank to consider. Thus, Wilson cannot demonstrate that PNC Bank falsely represented to him that it would consider his application for a modification.

### 2. PNC Bank's Authority to Modify Loan

Wilson challenges PNC Bank's alleged conduct in representing to him that he could apply for, or be considered for, a loan modification under the federal Home Affordable Modification Program ("HAMP") when, as it is now undisputed, Wilson was never eligible for a modification under HAMP. Wilson asserts PNC

11

Bank had invited him to apply for a HAMP modification, but then for the first time on January 10, 2011, it informed him it could not provide assistance under HAMP because "We service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan under the Home Affordable Modification Program." (Doc. 66-1 at 80 of 81.) Also, in its letter dated March 12, 2012, PNC Bank informed Wilson for the first time that his loan did not qualify under HAMP because his loan originated after January 1, 2009. (Doc. 77-2 at 5-6 of 7.)

The fundamental defect with Wilson's arguments as to PNC Bank's alleged misrepresentations concerning its authority to consider Wilson for a HAMP modification is that the record does not reflect that PNC Bank actually invited him to apply for a HAMP modification. Although Wilson suggests, by reference to his Statement of Disputed Facts, that PNC Bank invited him to apply for a HAMP modification, none of the facts or documents to which he cites establish that PNC Bank expressly invited him to apply for a HAMP modification. (Doc. 76 at 6.) Wilson does not specifically identify a representation made by PNC Bank in that regard, and the Court is not further obligated to "scour the record in search of a genuine issue of material fact. [The district court] may rely on the nonmoving party to identify with reasonable particularity the evidence [in the record] that

12

precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted). The court is not obligated "to undertake a cumbersome review of the record" on behalf of the non-moving party. *Simmons v. Navajo County, Arizona*, 609 F.3d 1011, 1017 (9th Cir. 2010). Absent evidence of an actual representation from PNC Bank telling Wilson to apply for a HAMP modification, Wilson cannot sustain his claim that PNC Bank's representation violated the Consumer Protection Act.

### 3. Advice From PNC Bank to Default on Loan

PNC Bank moves to dismiss Wilson's assertion that it advised him to default on his loan thus rendering it liable under the Consumer Protection Act. It asserts it never advised Wilson to go into default, and the Court agrees Wilson has not identified a genuine issue of material fact to the contrary.

Wilson's claim asserting PNC Bank advised him to default on his loan is predicated upon the facts and holding in *Morrow v. Bank of America, N.A.*, 324 P.3d 1167 (Mont. 2014) as they pertain to a Consumer Protection Act claim. The court in *Morrow* recognized that under Montana law the ordinary banking or lending relationship between a bank and its customer is a simple, arms-length, debtor/creditor relationship that does not impose fiduciary responsibilities upon the lender with respect to its conduct towards a borrower. *Morrow v. Bank of*

*America, N.A.*, 324 P.3d 1167, 1177 (Mont. 2014) (citation omitted). Thus, with respect to an existing loan a lender "has no duty to modify or renegotiate a defaulted loan[]" for the benefit of a borrower. *Id*.

A lender may, however, become a financial advisor to the customer, thus creating a relationship of trust and confidence where it "goes beyond the ordinary role of a lender [...] and actively advises customers in the conduct of their affairs, the bank may owe a fiduciary duty." *Morrow*, 324 P.3d at 1177 (citation omitted). But, to be sure, "[i]f the borrower has not been advised by the bank or has not relied on that advice, no fiduciary relationship exists." *Id*.

In *Morrow*, the borrowers contacted the lender to discuss a modification of their loan. Of particular significance in that case, the lender responded to the borrowers by "advis[ing] them it would be in their best interests to deliberately miss a payment and default on their loan[, and the borrowers...] relied on this advice when they intentionally defaulted on their mortgage [to their detriment] hoping to qualify for a modification." *Morrow*, 324 P.3d at 1178. The borrowers "defaulted only at [the lender's] direction." *Id*. 324 P.3d at 1181. The lender also advised the borrowers to pay a reduced monthly loan payment amount. Under those circumstances, the court concluded that the lender's advice was "not the type of advice 'common in the usual arms-length debtor/creditor relationship[,]'" and

14

gave rise to a fiduciary duty. *Id*. 324 P.3d at 1178.

Having found the lender in *Morrow* was subject to a fiduciary duty based on its conduct in advising the borrowers to default, the court concluded that same conduct was sufficient to also support a claim for unfair or deceptive practices under the Consumer Protection Act. *Morrow*, 324 P.3d at 1184-85. Therefore, based on *Morrow*, Wilson attempts to demonstrate that PNC Bank similarly advised him to default on his loan.

Wilson relies upon his deposition testimony which he contends establishes that PNC Bank "advised" him to default on his loan. The full relevant context of his referenced deposition testimony reads as follows:

> BY MS. FAURE:
>
> Q. [...] But my question is, you're telling me that someone from PNC told you to go into default?
>
> A. Suggested that I go into default.
>
> Q. And you don't know the date or the person?
>
> A. Nope.
>
> Q . And that's the only reason you quit paying in July of 2011?
>
> A . Trying to do everything I could to get a modification, relying on the experience of PNC and their representatives, the people that are employed with PNC to help me get through this terrible time in my life.
>
> Q. Well, isn't it true that they told you that a loan can't be current for modification?

A. Whatever the terminology was, it was suggested -- it's suggested the way they talk to you that you go into default.

Q. Well, you extrapolated what they told you as I need to default. They didn't tell you go default on your loan, did they?

A. PNC said you will not be –

Q. Eligible?

A. -- eligible or considered -- considered for a modification until you go into default.

Q. Correct.

A. Even though -- even though there's incentive payouts and people that are current with their - - their loan would obviously be a better fit for a modification.

Q. Well, that's your perspective. That's not what they told you.

A. Correct.

Q. Okay. They told you that you're not eligible for a modification if your loan is current. Correct?

A. No. I said that they won't - -

[...]

BY MS. FAURE:

[...]

Q. But when PNC told you that you were not eligible for modification because your loan was current, you took that to mean you needed to default on your loan?

A. Yes. I was led to believe that I would be helped with some type of program if I entered default. That is what I was led to believe.

Q. And you were led to believe that based on the statement that your loan can't be current in order for you to be eligible for modification?

A. That's your statement, ma'am.

16

(Doc. 83-2 at 3-5 of 5.)

In contrast to the facts in the *Morrow* case, Wilson's referenced deposition testimony – even when read in a light most favorable to him – is not sufficient to create a genuine issue of material fact as to whether PNC Bank instructed or advised him to default on his loan.  At best, Wilson's testimony establishes only that, based on his interpretation of the "way [PNC Bank] talked to [him]", its communications with him "suggested that [he] go into default."  Wilson's own testimony clarifies that "PNC said you will not be [...] eligible or considered [...] for a modification until you go into default[,]" and he was "led to believe" he could get a modification if he entered default.

The Court finds that Wilson's testimony describes PNC Bank's communications to him as, at best, nothing more than an explanation of the circumstances or conditions precedent to its consideration of any borrower's application for a loan modification.  PNC Bank's explanation in that regard does not equate to either a directive, an instruction, or advice telling Wilson to default on his loan.  A lender's conduct in explaining circumstances relevant to the loan modification process cannot give rise to liability under *Morrow* absent express advice from the lender instructing the borrower as to the conduct of his or her affairs.  Therefore, the Court concludes that Wilson's deposition testimony does

17

not raise a genuine issue of material fact as to whether PNC Bank advised him to default on his loan.

In a further effort to suggest that PNC Bank advised him to default, Wilson argues that notes in PNC Bank's records support his claim.  He relies upon bank notes on July 13, 2010, stating:  "LOAN IS CURRENT AND HAS NOT WENT 30+.  WILL HAVE OFFER THE BORROWER THE OPTION OF GOING DEL ON FB."  (Doc. 66-1 at 76 of 81.)  Wilson contends, upon his own speculative "information and belief", that the notes demonstrate that PNC Bank did, or planned to, advise him to "go delinquent on forbearance."  (Doc. 76 at 9.)  But Wilson identifies no evidence to support his speculation as to exactly what is meant by the referenced July 13, 2010 note.  Thus, Wilson's speculation is insufficient to raise a genuine issue of material fact to allow him to proceed to trial.

### 4. <u>Damages</u>

PNC Bank presents the alternate argument that Wilson's Consumer Protection Act claims are subject to dismissal because he cannot identify any damages that he sustained as a result of PNC Bank's conduct.  Rather, PNC Bank contends that any damages Wilson may have suffered were as a result of his own financial troubles and his default on his loan.  In response, Wilson argues only that

"actual damages are not required for the recovery of statutory damages under the" Montana Consumer Protection Act. The Court disagrees.

The Consumer Protection Act authorizes a consumer to bring a civil action under the Act when a consumer "suffers any ascertainable loss of money or property, real or personal, as a result of" an unfair or deceptive act or practice prohibited under Mont. Code. Ann. § 30-14-103. Mont. Code Ann. § 30-14-133(1). The statute clearly requires an "ascertainable loss" - an identifiable loss.

Admittedly, the Consumer Protection Act does permit a consumer to "recover actual damages or $500, whichever is greater." Mont. Code Ann. § 30-14-133(1). But even the possibility of recovering the statutory $500 is triggered only after first identifying an "ascertainable loss."

Here, Wilson's bare argument that "actual damages" are not required for a recovery under the Consumer Protection Act is wholly insufficient to meet his summary judgment burden to identify an "ascertainable loss" he suffered "as a result of" PNC Bank's conduct. Wilson fails to reference specific facts that identify any ascertainable loss of money or property he sustained as a result of PNC Bank's conduct. Absent the identification of an ascertainable loss of money or property, a claim under the Consumer Protection Act is subject to dismissal. *Vinion v. Amgen, Inc.*, 2004 WL 6057351, *4 (D. Mont. 2004).

## IV. Conclusion

Based on the foregoing, IT IS HEREBY RECOMMENDED that PNC Bank's motion for summary judgment be GRANTED. It is entitled to foreclosure and sale of the Gallatin Property, and Wilson's claims under the Consumer Protection Act should be DISMISSED.

DATED this 28th day of April, 2016.

_____
Jeremiah C. Lynch
United States Magistrate Judge